IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHANNING MARTIN, by and through
Qushawina Martin, as Mother and Next of Friend                    PLAINTIFF

V.                                                    CAUSE NO.: 1:10CV203-SA-DAS

DEWAYNE CHANDLER, in his
individual capacity                                                    DEFENDANT

CONSOLIDATED WITH

DOROTHY G. HEARD                                                    PLAINTIFF

V.                                                    CAUSE NO.: 1:10CV204-SA-DAS

DEWAYNE CHANDLER, in his
individual capacity                                                    DEFENDANT

MEMORANDUM OPINION

Defendant has filed a Motion for Summary Judgment seeking dismissal of these cases

against him on the basis of qualified immunity. After reviewing the motion, responses, rules and

authorities, the Court finds that judgment as a matter of law is appropriate.

*Factual and Procedural Background*[1]

Dorothy Heard owns the Precious Hands Daycare Center in Verona, Mississippi. In August

of 2009, Officer Dewayne Chandler of the Verona Police Department instigated a traffic stop after

witnessing a vehicle run two stop signs. Once the driver noticed Chandler's blue lights, the vehicle

pulled over in front of the Precious Hands Daycare Center. While Chandler was radioing in his

position and calling his partner on his cell phone for back up, Dorothy Heard came out of the

---

[1]The facts set forth are based on the Plaintiff Dorothy Heard's recollection of events on
the date in question. Heard's account of that day differs from Officer Chandler's, and even her
daughter's recollection. Because Plaintiffs are unable to surmount Defendant's qualified
immunity defense, the Court assumes for purposes of this motion that Plaintiffs' facts are true.

daycare and approached the patrol car's driver's side window. Heard asked Chandler to take the traffic stop elsewhere because she did not believe a child care center to be the proper place for a traffic stop. Chandler told Heard to get back inside the daycare because she was interfering with his traffic stop. Heard returned to the daycare center. Heard's daughter, Qushawina Martin, also approached Officer Chandler, who told her to get back inside the daycare. Once Chandler's partner arrived on the scene, the officers removed a quart beer bottle and a steak knife and placed those items on the trunk of the vehicle. Heard went back out to the site of the traffic stop to let the officers know she did not want alcohol or weapons on the premises of her daycare center. The officers again asked Heard to please stay inside the daycare center. While the officers were attending to the traffic stop, Martin was taking pictures on her cell phone of the scene.

Chandler approached the daycare center. Heard yelled something at him from the doorway, and Chandler grabbed and twisted Heard's arm in an attempt to effectuate an arrest for disorderly conduct and interfering with a traffic stop. During his attempt to arrest Heard, Qushawina Martin's one year old son, Channing, was standing beside Heard and fell hitting his head. Heard pulled her arm from Chandler's grasp and shut the daycare door.

Dorothy Heard and Qushawina Martin, on behalf of her son Channing, filed complaints alleging they were unreasonably seized pursuant to the Fourth Amendment, and that Chandler used unreasonable force in attempting to arrest Heard, resulting in injuries to both Heard and Channing Martin.

Officer Dewayne Chandler asserts he is protected by qualified immunity.

2

*Summary Judgment Standard*

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ("the burden on the moving party may be discharged by 'showing'. . . that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (quoting FED. R. CIV. P. 56(e)).  The non-movant's burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e).

Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106  S. Ct. 2548.

*Discussion and Analysis*

Law enforcement officials, "like other public officials acting within the scope of their official duties, are shielded from claims of civil liability, including § 1983 claims, by qualified immunity." Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 753 (5th Cir. 2001). Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Good v. Curtis, 601 F.3d 393, 400 (5th Cir. 2010) (quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id.

(quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

When a defendant asserts qualified immunity, the plaintiff has the burden to rebut the defense. Hampton v. Oktibbeha Cnty. Sheriff Dep't, 480 F.3d 358, 363 (5th Cir. 2007). In determining whether qualified immunity exists in the summary judgment posture, the Court "'looks to the evidence before it (in the light most favorable to the plaintiff) . . . .'" McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (quoting Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996)).

Courts use a two-step analysis to determine whether qualified immunity applies. "[A] court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation." Collier v. Montgomery, 569 F.3d 214, 217 (5th Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). Second, if a violation has been alleged, the court must determine "'whether [the officer's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.'" Id. (quoting Freeman v. Gore, 483 F.3d 404, 411 (5th Cir. 2007)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202, 121 S. Ct. 2151. See also Wernecke v. Garcia, 591 F.3d 386, 392 (5th Cir. 2009) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.")

Plaintiffs contend that the unprovoked physical assault of Heard and Channing Martin while attempting to make a warrantless arrest without probable cause violated the Fourth Amendment.

4

The record is undisputed that Dorothy Heard was not arrested. Heard pulled her arm back from Officer Chandler's grasp prior to him being able to put her in handcuffs. Heard was not booked or taken to jail. Therefore, there was no constitutional violation for a warrantless arrest as Heard was not arrested. Even if this Court were to consider Heard's attempted arrest a "seizure" under the Fourth Amendment, there was sufficient probable cause to arrest her for disorderly conduct.

The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrest without probable cause. Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). "A warrantless arrest violates a suspect's Fourth and Fourteenth Amendment rights if the arresting officer lacks probable cause to believe that the suspect has committed a crime." Bodzin v. City of Dallas, 768 F.2d 722, 724 (5th Cir. 1985). Whether an arresting officer had probable cause depends on whether, at the time of the arrest, the facts and circumstances within the officer's knowledge would support a reasonable person's belief that the arrested individual had committed or was committing an offense. Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964); Hart v. O'Brien, 127 F.3d 424, 444 (5th Cir. 1997).

Here, Officer Chandler informed Heard that she was interfering with his traffic stop to the extent that he had probable cause to arrest her for disorderly conduct. Mississippi Code Section 97-35-7 defines "disorderly conduct" to constitute "fail[ing] or refus[ing] to promptly comply with or obey a request, command, or order of a law enforcement officer . . . ."

Heard initially came out of the daycare center while Chandler was on the phone calling for backup. Heard walked between the patrol car and the vehicle that was pulled over to approach Chandler's driver's side window. Heard acknowledged that after Chandler informed her to get back inside the daycare while he was performing the traffic stop, she said, "no, you're not going to tell

me what I can do on my property. I pay taxes here just like everybody else pay taxes. And I said, well, I'll just call the mayor." She further admits that she went back out a second time and told the officers to get off her property. Thus, Heard failed to comply with Chandler's order for her to stay inside the daycare center while the traffic stop was ongoing. Therefore, there is probable cause that Heard was committing the offense of disorderly conduct by refusing to comply with Officer Chandler's request. Accordingly, a warrantless arrest, had it actually occurred, would not constitute a Fourth Amendment violation.

The Court construes the remainder of Plaintiffs' claims be claims for excessive force used in grabbing Heard's arm and relating to Channing Martin's fall. "[T]o state a violation of the Fourth Amendment prohibition on excessive force, the plaintiff must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." Bush v. Strain, 513 F.3d 492, 500-01 (5th Cir. 2008).

Heard has alleged she suffered a swollen arm and may require surgery for complete recovery. Channing Martin suffered a knot on his head which his mother contends is still present over two years after the incident. The relevant inquiry is whether the force used by the defendant was clearly excessive or clearly unreasonable and whether the totality of the circumstances justified the particular use of force. "Specifically, the court should consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Bush, 513 F.3d at 501 (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). If the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to underlying intent or motivation, then he is entitled to qualified immunity. Ramirez

6

v. Knoulton, 542 F.3d 124, 128-29 (5th Cir. 2008).

Both parties acknowledge that Chandler grabbed Heard's arm in his attempt to arrest her. Heard testified that Chandler reached for his handcuffs and grabbed her arm. Qushawina Martin grabbed her mother's other arm and "jerked" Heard back into the daycare and shut the door. The force used in this case was reasonable.

Plaintiffs have put forth no evidence that Channing Martin's fall was attributable to any action on the part of Officer Chandler, or that, even if it was Chandler's fault the child fell, Chandler's actions were intentional. Chandler's grabbing Heard's arm in his attempt to place handcuffs on her was reasonable. To prevail on Plaintiffs' theory of violation of Fourth Amendment excessive force, the Plaintiffs must produce evidence that the officer's acts were both intentional and unreasonable. Graham v. Connor, 490 U.S. at 596-97, 109 S. Ct. 1378. Negligent or accidental conduct by police officers does not rise to the level of a constitutional violation. Brower v. County of Inyo, 489 U.S. 593, 596, 109 S. Ct. 1378. 103 L. Ed. 2d 628 (1989).

Heard testified that when Chandler came into the daycare center trying to arrest her, Channing "just fell back." According to Heard, Channing "bumped his head." Qushawina Martin testified that "in the process of [Chandler] grabbing [Heard], reaching up, [Chandler] hit my child in the forehead and he fell back and hit the floor." There is no evidence from which to infer that Officer Chandler intended to exercise any force against the one year old child at Dorothy Heard's feet inside the daycare center. Accordingly, Plaintiffs' excessive force claim fails as to Channing Martin as well.

*Conclusion*

Dewayne Chandler is entitled to qualified immunity. Therefore, Plaintiffs' claims are dismissed.

SO ORDERED, this the 1st day of February, 2012.

 **/s/ Sharion Aycock**
**U.S. DISTRICT JUDGE**